(No. 65992.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEPHEN SHINKLE, Appellee.

*Opinion filed May 24, 1989.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., Kenneth T. McCurry, Inge Fryklund and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

Patrick G. Reardon and Stephen M. Connolly, both of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

This cause requires us to reexamine those provisions of the Criminal Code of 1961 which regulate eavesdrop-

ping in Illinois (Ill. Rev. Stat. 1983, ch. 38, par. 14—1 *et seq.*).

On July 12, 1983, the defendant, Stephen Shinkle, was indicted in the circuit court of Cook County for arson and conspiracy to commit arson. Prior to trial, defendant moved to suppress evidence which was allegedly obtained in violation of the Illinois eavesdropping statutes. The circuit court judge denied the defendant's motion. The cause proceeded to jury trial, and on May 2, 1985, defendant was found guilty as charged. The defendant appealed his conviction and sentence to the appellate court. The appellate court held that the trial court's refusal to suppress evidence obtained in violation of the Illinois eavesdropping statute constituted reversible error. We granted the State's petition for leave to appeal under Supreme Court Rule 315 (107 Ill. 2d R. 315).

On July 12, 1983, the defendant was charged by grand jury indictment with two counts of arson (Ill. Rev. Stat. 1983, ch. 38, par. 20—1(a)), and one count of conspiracy to commit arson (Ill. Rev. Stat. 1983, ch. 38, par. 8—2). Defendant's co-conspirator, Larry Thompson, was also indicted on charges of arson and conspiracy to commit arson. The defendant subsequently appeared with counsel and entered a plea of not guilty.

On May 9, 1984, the defendant filed a motion to suppress evidence alleging that on June 22, 1983, an agent of the Oak Park police department used an electronic listening device to overhear a conversation between defendant and his co-conspirator. This conduct occurred without the consent of the defendant, without a warrant, and without the authorization of a judge of the circuit court. As a result, the defendant asserted that the conduct constituted eavesdropping in violation of the United States Constitution, the Illinois Constitution, and Illinois law. The defendant thus moved for suppression of all evidence obtained relating to the conversation.

On September 5, 1984, hearing was held on the motion to suppress. The defense first called Larry Thompson, defendant's co-conspirator, who testified that on the evening of June 22, 1983, he was at the Oak Park police department with Detective Frank Michalek. At that time, Michalek instructed Thompson to telephone the defendant. After Thompson dialed defendant's telephone number, Michalek picked up an extension phone which was located in the same room. Michalek placed the receiver of the telephone to his ear with his hand over the mouthpiece and listened as Thompson engaged in a conversation with the defendant. At no time was the defendant informed that Michalek was listening to the conversation on an extension telephone.

Detective Michalek corroborated the testimony of Thompson. He stated that he directed Thompson to place a call to the defendant and then listened to the conversation on the extension. According to Michalek, Thompson willingly allowed the conversation to be monitored. Michalek further acknowledged that the defendant was unaware that the conversation was being heard by a third party. Michalek testified that he took notes of the conversation, which were later transcribed and filed with the police reports. Michalek admitted that he did not possess a warrant or any court authorization to eavesdrop. This was the sum of the evidence presented at the hearing.

Based upon this evidence, the circuit court judge found that in light of available technology, Illinois case law, and the fact that the extension telephone was unaltered, there was no eavesdropping device and thus no eavesdropping violation. As a result, the circuit court judge denied the defendant's motion to suppress.

On April 29, 1985, trial commenced. The evidence presented at trial is set out in detail in the appellate court disposition. Because of the limited nature of our review, we shall only reiterate the evidence relevant to the eavesdropping issue.

Thompson testified that on June 22, 1983, under the direction of Michalek, he placed a telephone call to the defendant. Michalek, who was in the same office, listened to the conversation on an extension phone with his hand held over the mouthpiece. Thompson testified at trial that during the conversation he asked the defendant to meet him and pay him the money still owing for the arson of defendant's office. The defendant told Thompson he did not want Thompson to call and that he would meet with him the next evening to give him the money. Thompson admitted that he could not give a verbatim account of the conversation. Thompson finally testified that he had been indicted on two counts of arson and one count of conspiracy. He indicated that the State's Attorney had promised him probation in exchange for his testimony against defendant.

Detective Michalek testified at trial corroborating the testimony of Thompson. Michalek additionally reiterated his recollection of the conversation verbatim:

"Larry Thompson at that time said 'Hi, do you know who this is?' Mr. Shinkle said, 'Hi. Yeah, I know who it is.'

Larry at that time said that he was in big trouble and he wanted to meet with Mr. Shinkle. Mr. Shinkle replied, 'Okay.' Mr. Thompson stated that he said, 'I need the rest of the money for the job that I did on your office.' He says, 'I need at least $300 and anything else that you may be able to come up with.'

He said, 'Now that I got caught I need an attorney.' Mr. Shinkle replied, 'Don't worry about it. You will get it.'

At that time Mr. Thompson made a statement that he almost blew himself up in the building. Mr. Shinkle replied, 'Yes. I know. You told me already.' Mr. Shinkle made a remark as to why Mr. Thompson was calling. He said, 'We shouldn't be talking on the phone.' "

Detective Michalek admitted that he did not possess a warrant to eavesdrop, and that he did not seek judicial authorization subsequent to the act.

The jury returned verdicts of guilty against defendant for arson and conspiracy to commit arson. The defend-

ant appealed his conviction to the appellate court. At the appellate court level, the defendant claimed that the trial court erroneously allowed Michalek to testify regarding the telephone conversation between Thompson and the defendant on June 22, 1983. Defendant maintained that Michalek's conduct in listening on the extension line with his hand over the mouthpiece of the telephone constituted eavesdropping in violation of the Illinois Constitution and section 14—2 of the Criminal Code of 1961. The State, however, argued that there was no eavesdropping because one of the parties to the conversation consented and because an unaltered extension telephone is not an eavesdropping device under Illinois law.

Relying on this court's disposition in *People v. Gervasi* (1982), 89 Ill. 2d 522, the appellate court found that Michalek's act of placing his hand over the mouthpiece of the telephone converted the telephone into an eavesdropping device. The appellate court stated that where a telephone "cannot transmit sound while it is being used to receive it, it has been rendered an illegal eavesdropping device, regardless of the method used to prevent such transmission." (160 Ill. App. 3d 1043, 1051.) As a result, the appellate court determined that the admission of the evidence was error and that the magnitude of the error warranted reversal. From this disposition, the State appealed.

The sole issue presented for our determination is whether the appellate court correctly construed the term "eavesdropping device" to include an extension telephone with the mouthpiece manually covered.

The Criminal Code of 1961 provides that evidence obtained in violation of the eavesdropping laws is not admissible in any trial, criminal or civil. (Ill. Rev. Stat. 1983, ch. 38, par. 14—5.) Eavesdropping occurs when a person:

> "[u]ses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation or (2) with the consent of any one party to such conversation and in ac-

cordance with Article 108A of the Code of Criminal Procedure \*\*\*." (Ill. Rev. Stat. 1983, ch. 38, par 14—2(a).)

Article 108A provides guidelines for judicial authorization and supervision of the use of eavesdropping devices where only one party has consented to the monitoring. (Ill. Rev. Stat. 1983, ch. 38, par. 108A—1 *et seq.*) The term "eavesdropping device" is defined as:

"any device capable of being used to hear or record oral conversation whether such conversation is conducted in person, by telephone, or by any other means; Provided [*sic*], however, that this definition shall not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing." Ill. Rev. Stat. 1983, ch. 38, par. 14—1(a).

The State initially asserts, and defendant does not contest, that the issue presented here is limited to one of statutory interpretation. The State claims that neither the State nor Federal Constitutions are implicated because one of the parties to the conversation gave consent to the police to monitor the conversation. Based upon our disposition in *Gervasi*, 89 Ill. 2d 522, we agree. In *Gervasi*, this court held that State and Federal constitutional protections against the invasion of privacy are not offended where one party to a conversation allows another party to listen. *Gervasi*, 89 Ill. 2d at 527; see also *United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122.

The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. (*People v. Hare* (1988), 119 Ill. 2d 441, 447, quoting *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139-40.) This intent is to be found in the language of the statute, which must be given its plain and ordinary meaning. (*People v. Sangster* (1982), 91 Ill. 2d 260, 264.) A criminal or penal statute is to be strictly construed in favor of the accused and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. *Sangster*, 91 Ill. 2d at 264.

This court has construed the pertinent eavesdropping provision on several occasions in the past. In *People v. Dixon* (1961), 22 Ill. 2d 513, a case involving the predecessor to the eavesdropping statute at issue here, the court determined that the conduct of a police officer in overhearing a telephone conversation by use of an extension telephone was not violative of the eavesdropping laws. In reaching that determination, the court noted that the statute in effect at the time defined an eavesdropping device as "any device employing electricity" to hear or record all or any part of an oral conversation "without consent of any party thereto." (*Dixon*, 22 Ill. 2d at 516.) The court additionally recognized that the United States Supreme Court, in construing the analogous Federal statute, had expressly held that "the monitoring of a conversation on an extension telephone does not constitute an interception of the conversation or the use of a device employing electricity to hear a conversation." (*Dixon*, 22 Ill. 2d at 516, citing *Rathburn v. United States* (1957), 355 U.S. 107, 111, 2 L. Ed. 2d 134, 137-38, 78 S. Ct. 161, 164; *Ladrey v. Comm'n on Licensure to Practice Healing Art* (D.C. Cir. 1958), 261 F.2d 68.) Since there was no eavesdropping device, the *Dixon* majority concluded there was no violation of the eavesdropping laws.

Shortly after *Dixon*, the statute defining "eavesdropping device" was amended. The legislature deleted the "employing electricity" language, leaving the remaining language of the provision intact. (Ill. Rev. Stat. 1961, ch. 38, par. 14—1(a).) An "eavesdropping device" was then defined as "any device capable of being used to hear or record oral conversation." Ill. Rev. Stat. 1961, ch. 38, par. 14—1(a).

The amended definition of "eavesdropping device" has also been addressed by this court. In *People v. Gaines* (1981), 88 Ill. 2d 342, we were asked to determine "whether a telephone extension is an eavesdropping device."

The defendant in *Gaines* sought suppression of testimony of a police officer who overheard two telephone conversations on an extension telephone. The two conversations were between the defendant and his mother, and the defendant and his brother. The police officer listened to the conversations with the consent of the defendant's mother. During the conversations the defendant implicated himself in a murder and further enabled police in the recovery of the murder weapon. The defendant claimed that testimony of the conversations was inadmissible as a result of illegal eavesdropping. This court disagreed, however, holding that an extension telephone is not an "eavesdropping device." (*Gaines*, 88 Ill. 2d at 363.) The majority explained:

> "The monitoring of the defendant's telephone conversation *** was not proscribed by section 14—2(a), for an extension telephone is not an eavesdropping device as that term is defined by section 14—1(a). *People v. Dixon* (1961), 22 Ill. 2d 513, so held with respect to the statutory antecedent of section 14—1(a) (Ill. Rev. Stat. 1959, ch. 38, par. 206.1), and that holding is applicable as well to the present section." (*Gaines*, 88 Ill. 2d at 363.)

Although the defendant sought to distinguish the *Dixon* construction of the "eavesdropping device" provision based upon the "employing electricity" language, the court noted:

> "The decision in *Dixon*, of course, could not have rested on the proposition that an extension telephone is not a device employing electricity. The basis of the decision was rather that the statute is directed against the use of devices other than the telephone itself when the latter has not been functionally altered." *Gaines*, 88 Ill. 2d at 363.

This interpretation was reiterated and applied in *People v. Gervasi* (1982), 89 Ill. 2d 522. In *Gervasi*, the court applied the "functional alteration" language of *Gaines*. While initially recognizing that an extension telephone by itself is not an eavesdropping device, the court concluded that an extension telephone with the speaking element removed from the mouthpiece is an

eavesdropping device proscribed by statute. *Gervasi*, 89 Ill. 2d at 527.

Unlike the telephone in *Gervasi*, the telephone here was not functionally altered. The mechanism of the telephone remained intact. There was nothing taken from, nor attached to, the telephone. The telephone was capable of transmitting as well as receiving sound. The manner in which the police officer held the telephone did nothing to alter its ability to transmit sound. The conduct of the police officer was no different from that of the officer in *Gaines*. The officer merely listened to the conversation on an extension telephone. Since it has been previously established that an unaltered extension telephone is not an eavesdropping device for purposes of our statute, there was no eavesdropping in this case. The trial court correctly denied the defendant's motion to suppress evidence.

The defendant additionally urges that the policy and purpose underlying the Illinois eavesdropping act require an examination of the intent of the user of a device. According to the defendant, where the intent of the user is to make a telephone function as an instrument to surreptitiously overhear or eavesdrop, then the telephone becomes an eavesdropping device within the purview of the statute. We believe that this construction is not supported by the language of the statute, which makes no reference to intent.

Based on the foregoing, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.