THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEVEN GOLDSTEIN, Defendant-Appellant.

Fifth District   No. 5—88—0809

Opinion filed October 30, 1990.

Thomas W. Mansfield, of Reed, Heller & Mansfield, of Pinckneyville, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

The defendant, Steven Goldstein, presents a single issue for review, whether the enhanced penalty "mandated by the schoolyard statute in the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1407(b)(2)) should be applied when delivery of a controlled substance occurs in a college dormitory room or the campus library."

The defendant was convicted of six offenses involving the delivery on three separate occasions of a controlled substance, namely, cocaine, on the campus of Southern Illinois University at Carbondale (hereafter referred to as SIU-C). The three transactions occurred at about 12:30 a.m. on October 10, 1986, 7:30 p.m. later that same day, and 6:50 p.m. on October 15, 1986. The first two transactions, on October 10, 1986, occurred in a dormitory room in the Mae Smith dormitory on the SIU-C campus; the third transaction, on October 15, 1986, occurred in the men's room on the fifth floor of Morris Library on the SIU-C campus. The first two transactions each involved 3.4 grams of cocaine; the third transaction involved 6.7 grams of cocaine. All three of the purchases were made from defendant by Ken Harris, special agent for the Southern Illinois Enforcement Group. The defendant was charged with two offenses with regard to each of the three transactions: unlawful delivery of a controlled substance on school property (Ill. Rev. Stat. 1985, ch. 56½, par. 1407(b)(2)) and unlawful delivery of a controlled substance (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(c)).

Section 407(b)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1407(b)(2)) provides that any person who violates subsection (c) of section 401 (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(c))

"in any school, on the real property comprising any school or on any public way within 1,000 feet of the real property comprising any school is guilty of a Class 1 felony, the fine

for which shall not exceed $250,000." (Ill. Rev. Stat. 1985, ch. 56½, par. 1407(b)(2).)

Section 401(c) provides that any person who knowingly manufactures or delivers, or possesses with intent to manufacture or deliver, a controlled or counterfeit substance with respect to

"any other amount of a controlled or counterfeit substance classified in Schedules I or II which is a narcotic drug is guilty of a Class 2 felony. The fine for violation of this subsection (c) shall not be more than $200,000." (Ill. Rev. Stat. 1985, ch. 56½, par. 1407(c).)

Section 5—5—3(c)(2)(D) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(2)(D)) provides that a period of probation, a term of periodic imprisonment or conditional discharge shall not be imposed for "[a] violation of Section 401.1 or 407 of the Illinois Controlled Substances Act, or a violation of subdivision (b)(2) of Section 401 of that Act which relates to more than 5 grams of a substance containing cocaine or an analog thereof."

In case number 87—CF—142 and case number 87—CF—143, each of which dealt with one of the transactions occurring on October 10, 1986, the trial court found the defendant guilty on both counts in each case following a bench trial at which only Agent Harris and the defendant testified. Agent Harris had posed as the roommate of the informant who had introduced Agent Harris to the defendant. At the time in question, which was prior to his graduation from SIU-C in 1987, the defendant was an SIU-C student residing off campus. The place of the meeting in each of the three instances was suggested by someone other than the defendant, first by the informant and later by Agent Harris; the defendant indicated that he had wanted to meet at his own house. In case number 87—CF—144, which dealt with the transaction occurring on October 15, 1986, the trial court found the defendant guilty on both counts following a stipulated bench trial consisting of a two-page statement, bearing the heading "People's Evidence," which was read into the record by the trial court. The statement, filed on November 28, 1988, is signed by counsel for each of the parties. On November 28, 1988, the trial court imposed a term of four years in the Illinois Department of Corrections on the count in each of the three cases concerning delivery of a controlled substance on school property, the three terms to be served concurrently. The court imposed no sentence with regard to the remaining count in each of the three cases, that is, the count concerning delivery of a controlled substance. In addition to imposing the minimum sentence,

the trial court imposed fines in each of the three cases.

In his brief the defendant contends that the convictions for delivery of a controlled substance on school property should be reversed because it is "contrary to the legislative intent underlying the schoolyard statute" inasmuch as each conviction was based upon an act of delivery that occurred on the property of a university, the defendant having been "drawn onto University property by police or their agent on each of the three occasions." Arguing that the legislature did not intend the statute to apply to the facts of this case, defendant seeks to have the convictions for delivery of a controlled substance on school property vacated and to have the cause remanded to the trial court for imposition of sentence upon the three convictions for delivery of a controlled substance.

■■ In construing a statute the court should look first and foremost to the terms of the statute as the best means of ascertaining the intent of the legislature. (*People v. Larson* (1985), 132 Ill. App. 3d 594, 478 N.E.2d 439.) The court may not alter the plain meaning of the legislature (*People v. Cochran* (1988), 167 Ill. App. 3d 830, 522 N.E.2d 261) or read a limitation into a statute that the legislature has not seen fit to enact (*People v. Larson*, 132 Ill. App. 3d 594, 478 N.E.2d 439). Nor may a court, by subtle construction, alter the plain meaning of the words employed. *People v. Larson*, 132 Ill. App. 3d 594, 478 N.E.2d 439.

■■ ■ The supreme court has recognized that a policy of lenity applies with respect to the interpretation of criminal statutes. (*People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48; *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.) As with the construction of any statute, the court construing a penal statute must ascertain legislative intent, and where that intent is in any way clouded or uncertain, the court must follow established rules relating to construction of penal statutes. (*People v. Carlock* (1981), 102 Ill. App. 3d 1100, 430 N.E.2d 212.) A penal statute is to be construed in favor of the accused, and nothing is to be taken by intendment or implication against him beyond the literal and obvious meaning of the statute. (*People v. Carlock*, 102 Ill. App. 3d 1100, 430 N.E.2d 212.) If a statute increasing a penalty or punishment is capable of two constructions, the one which operates in favor of the accused is to be adopted; such a statute is highly penal and should not be extended in its application to cases which do not, by the strictest construction, fall within its terms. (*People v. Carlock*, 102 Ill. App. 3d 1100, 430 N.E.2d 212.) However, a court of review has a duty to construe an act of the General Assembly in such a way as to pro-

mote its essential purposes (*People v. Carlock*, 102 Ill. App. 3d 1100, 430 N.E.2d 212). Although penal statutes are to be strictly construed in favor of the accused, a court must give effect to the legislative intent and must not read a statutory enactment rigidly as to defeat that intent. *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.

■ In construing statutory provisions, it is fundamental that the judicial role is to ascertain the intent of the legislature and give it effect. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 473 N.E.2d 1313.) A court will examine the entire statute for guidance as to that intent and will seek to determine the objective the statute sought to accomplish and the evils it desired to remedy. (*City of Springfield*, 105 Ill. 2d 336, 473 N.E.2d 1313.) To that end the judiciary possesses the authority to insert language into a statute that has been omitted through legislative oversight (*People v. Scott* (1974), 57 Ill. 2d 353, 312 N.E.2d 596; *Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 417).

As the defendant notes, no definition of the term "school" is found within section 407 of the Illinois Controlled Substances Act or, indeed, elsewhere within that act (Ill. Rev. Stat. 1985, ch. 56½, par. 1100 *et seq.*). The defendant maintains that it is "obvious" some limitation must be placed upon the scope of the words "any school" in section 407(b)(2), which otherwise would include, as the trial court noted, "a Barber College or a Truck Driving School. The possibilities are endless." Defendant stresses legislative intent as revealed by legislative discussion prior to the passage of Public Act 84—1075, which, when it became effective on December 2, 1985, amended section 407 of the Illinois Controlled Substances Act to add, among other sections, the one under which he stands convicted; defendant takes the position that "any school" refers only to "grade schools and high schools" because of the legislative concern, in passing Public Act 84—1075, with the activity of gangs in Illinois.

As the supreme court observed in *People v. M.A.* (1988), 124 Ill. 2d 135, 529 N.E.2d 492, Public Act 84—1075 created and amended numerous pieces of legislation, including the Illinois Controlled Substances Act, to increase the penalty for violations if the offense took place on or around school grounds. Further, Public Act 84—1075 amended section 24—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 24—1) concerning the unlawful use of weapons to enhance certain penalties as follows in subsection (c) (Ill. Rev. Stat. 1985, ch. 38, par. 24—1(c)).

"Violations on school property. (1) A person who violates Subsection 24—1(a)(6) or 24—1(a)(7) in any school or on the real property comprising any school commits a Class 2 felony. (2) A person who violates Subsection 24—1(a)(9) in any school or on the real property comprising any school commits a Class 3 felony. *School is defined as any public or private elementary or secondary school, community college, college or university.*" (Emphasis added.)

Subsection (b) (Ill. Rev. Stat. 1989, ch. 38, par. 24—1(b)) provides, as it provided prior to the addition of subsection (c) by Public Act 84—1075 (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(b)), that a person convicted of a violation of subsection 24—1(a)(6) or 24—1(a)(7) commits a Class 3 felony and a person convicted of a violation of subsection 24—1(a)(9) commits a Class 4 felony.

Public Act 84—1075 added as well section 24—3.3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 24—3.3), which provides as follows:

"Unlawful Sale or Delivery of Firearms on the Premises of Any School. Any person 18 years of age or older who sells, gives or delivers any firearm to any person under 18 years of age in any school or on the real property comprising any school commits a Class 3 felony. *School is defined, for the purposes of this Section, as any public or private elementary or secondary school, community college, college or university.* This does not apply to peace officers or to students carrying or possessing firearms for use in school training courses, parades, target shooting on school ranges, or otherwise with the consent of school authorities and which firearms are transported unloaded and enclosed in a suitable case, box or transportation package." (Emphasis added.)

Public Act 84—1075 also amended section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—7(7)(a)) in part by adding subsection (7), subsection (a) of which provides as follows:

"The definition of delinquent minor under Section 2—2 of this Act shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with an offense under Section 401 of the Illinois Controlled Substances Act while in a school, on the real property comprising any school or on a public way within 1,000 feet of the real property comprising any school. *School is defined, for the purposes of this Section, as any public or private elementary or secondary school, community college, college, or uni-*

*versity*. These charges and all other charges arising out of the same incident shall be prosecuted pursuant to the Illinois Controlled Substances Act." (Emphasis added.)

Comments by Senator Sangmeister indicate that this legislation was designed to contend with gang-related problems:

"As many of you are probably aware, because of the gang related problems that we're having in this State and, of course, throughout this country, there were a number of groups put together, none the least of which was by Senator Marovitz and myself who have held hearings in an effort to put together a gang crime package, for want of a better terminology. Senate Bill 201 is the start of that package. I believe it runs from 201 through 209. *** I would, of...course, urge you all to support this as an entire package. This was not put together willy-nilly, but after considering an awful lot of people...talking to the people out in the streets, and we think it is a fine package and one which will attack the problem in the State of Illinois." (84th Ill. Gen. Assem., Senate Proceedings, May 21, 1985, at 159-60 (statements of Senator Sangmeister).)

This "package" of bills embraces Senate Bill No. 208, which was ultimately incorporated in Public Act 84—1075. Senate Bill No. 208 pertained to the amendments of the Illinois Controlled Substances Act with which we are principally concerned in the instant case. Addressing Senate Bill No. 204, which pertained to the amendment of the Juvenile Court Act and was, like Senate Bill No. 208, ultimately incorporated in Public Act 84—1075, Senator Marovitz remarked that it was

"[a]nother in the gang crime package which provides that juveniles fifteen, sixteen years old who sell hard drugs within the safe school zone would be transferred to adult court, prosecution as adults, and I would ask for your favorable roll call on this bill. If we're going to get tough on crime and try and get rid of drugs in the schools, this is something we need." (84th Ill. Gen. Assem., Senate Proceedings, May 21, 1985, at 165 (statements of Senator Marovitz).)

Later Senator Marovitz said of the "gang crime package":

"Senate Bill 201 is the gang crime package. We passed out about six or seven bills to the House due to the deadline. Several of those bills did not get called and they are now all embodied in Senate Bill 207 [Public Act 84—1075]. That is the gang crime package that passed out of here without op-

position. It creates the safe school zones in and around school property and deals severely with the bringing of firearms, the selling of...the dealing of hard drugs in and around the schools. It deals with adults trying to recruit juveniles into the...into gangs." (84th Ill. Gen. Assem., Senate Proceedings, July 1, 1985, at 40 (statements of Senator Marovitz).)

Similarly, Representative Ronan observed on the same date:

"We now have corrected the First Conference Committee Report on Senate Bill 207—a very simple concept. What we're trying to do is make the schools safer in the State of Illinois. There was [sic] a few technical problems which we've worked out in this Conference Committee Report. I know of no opposition. I feel it's important that we go on record that we don't want guns or drugs sold in the schools of the State of Illinois. And I move for the passage of...the adoption of the First Conference Committee Report on Senate Bill 207." (84th Ill. Gen. Assem., House Proceedings, July 1, 1985, at 71 (statements of Representative Ronan).)

Later Representative Ronan stated of the bill, "We're talking about the sale of heroin, cocaine, and guns, and that should not go on in a school environment in the State of Illinois." 84th Ill. Gen. Assem., House Proceedings, July 1, 1985, at 76 (statements of Representative Ronan).

■ In light of the legislative purpose expressed above, we conclude that the legislature intended the words "any school" in section 407(b)(2) to refer, as they do elsewhere in Public Act 84—1075, to a public or private university. Although the words "any school" literally could refer to many more institutions of learning than those enumerated precisely and identically on three different occasions in Public Act 84—1075 by the words "any public or private elementary or secondary school, community college, college or university," we think that under all of these circumstances the legislature intended such a limitation with respect to section 407(b)(2). For the same reasons, however, we must disagree with the defendant that the legislature intended the further limitation he proposes, that is, restricting the application of section 407(b)(2) to violations that occur in "grade schools and high schools." Plainly, the purpose of the legislature in attempting to eliminate drugs from the schools of this State reasonably extends to those institutions where large numbers of young persons of college age commonly live and study. Nor, with respect to the purpose expressed by the legislature, can we make any meaningful distinction between a dormitory or a library and the

rest of a public or private university, and we conclude that the legislature intended none. We note that the defendant does not on appeal, as he did at trial, raise the issue of entrapment. He merely seems to suggest that the legislature did not intend section 407(b)(2) to apply to one who delivers a controlled substance on the property of a public university at the suggestion of another when he would have preferred to do so in his own home. We consider the distinction one without merit and hold section 407(b)(2) applicable here.

Although the defendant questioned the constitutionality of section 407 in the trial court, which decided that question adversely to him, he does not present the issue for our review in this appeal, and we make no determination in that regard.

Affirmed.

RARICK and GOLDENHERSH, JJ., concur.