(No. 70082.—
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. THOMAS FABING, Appellee.

*Opinion filed March 21, 1991.*

CALVO, BILANDIC and HEIPLE, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chi-

cago, and Renee Goldfarb and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

Warsawsky, McNeal, Fabing & Associates, of Chicago (Michael D. Fabing and Elizabeth A. Knospe, of counsel), for appellee.

JUSTICE CLARK delivered the opinion of the court:

The issue presented in this case is whether the Illinois Dangerous Animals Act (the Act) (Ill. Rev. Stat. 1987, ch. 8, par. 240 *et seq.*) is unconstitutionally vague because it does not define the term "life-threatening reptile." We find that the Act is not vague on its face, and that as applied to defendant, the Act is sufficiently clear that a person of ordinary intelligence would conclude that possession of three of defendant's reptiles was prohibited. However, we find that the Act is unconstitutionally vague as applied to defendant's possession of a fourth reptile.

Defendant, Thomas Fabing, was charged with four counts of violating the Act, in that he unlawfully possessed four life-threatening reptiles: a four-foot alligator, a seven-foot boa constrictor, and two Burmese pythons each approximately 15 to 20 feet in length. After a trial in the circuit court of Cook County, defendant was convicted on all four counts, and fined a total of $100. Pursuant to defendant's appeal, the appellate court held that the Act is unconstitutionally vague on its face and therefore reversed defendant's convictions. (196 Ill. App. 3d 495.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 317).

The Act prohibits ownership or possession of dangerous animals. (Ill. Rev. Stat. 1987, ch. 8, par. 241.) As amended, the Act defines a dangerous animal as "a lion, tiger, leopard, ocelot, jaguar, cheetah, margay, mountain lion, lynx, bobcat, jaguarundi, bear, hyena, wolf or coy-

ote, *or any poisonous or life-threatening reptile.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 8, par. 240.) Prior to 1986, the only reptiles prohibited under the Act were poisonous reptiles. By amending the Act to include the term "life-threatening," the legislature clearly intended to prohibit ownership of reptiles which, although not poisonous, are nonetheless life-threatening. Because the Act does not define "life-threatening," defendant argues that persons of common intelligence are unable to determine which animals are prohibited. Therefore, defendant argues the Act is unconstitutionally vague on its face and as applied to defendant.

Due process requires that a statute must not be "so vague that men of common intelligence must necessarily guess at its meaning or application. (*Smith v. Goguen* (1974), 415 U.S. 566, 39 L. Ed. 2d 605, 94 S. Ct. 1242; *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294; *Connally v. General Construction Co.* (1926), 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126; *People v. Palkes* (1972), 52 Ill. 2d 472.)" (*People v. Garrison* (1980), 82 Ill. 2d 444, 453.) In addition, "the statute must provide sufficiently definite standards for law-enforcement officers and triers of fact that its application does not depend merely on their private conceptions. (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294; *Interstate Circuit, Inc. v. City of Dallas* (1968), 390 U.S. 676, 20 L. Ed. 2d 225, 88 S. Ct. 1298; *Giaccio v. Pennsylvania* (1966), 382 U.S. 399, 15 L. Ed. 2d 447, 86 S. Ct. 518; *People v. Pembrock* (1976), 62 Ill. 2d 317.)" (*Garrison*, 82 Ill. 2d at 453.) To satisfy the requirements of due process, a statute's prohibitions must be sufficiently definite when measured by common understanding and practices. (*People v. Wawczak* (1985), 109 Ill. 2d 244, 249.) However, as we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Gray-*

*ned v. City of Rockford* (1972), 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300.

We note that all statutes are presumed to be constitutional (*People v. Schwartz* (1976), 64 Ill. 2d 275, 281), and the party challenging the statute has the burden of clearly establishing its constitutional infirmity (*People v. Bales* (1985), 108 Ill. 2d 182, 188). In considering a vagueness challenge to a statute, absent a contrary legislative intent, a court will assume "the words used in a statute have their ordinary and popularly understood meanings. (*People v. Schwartz* (1976), 64 Ill. 2d 275, 280; *Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507, 510.) In addition to the language used, consideration [will] also [be] given to the legislative objective and the evil the statute is designed to remedy. (*People v. Dednam* (1973), 55 Ill. 2d 565, 568.)" (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499.) Whenever possible, each word or phrase in a challenged statute will be given some reasonable meaning.

With the above principles in mind, we now consider defendant's argument that the Act is unconstitutionally vague because it does not provide any criteria for determining which reptiles are life-threatening. We note that except in the case of nonpoisonous reptiles, species is the sole criterion for determining whether possession of an animal is prohibited under the Act. Further, that determination is made without regard to the individual characteristics of the particular animal.

However, in the case of nonpoisonous reptiles, some criteria other than species must be applied to determine if an animal is within the scope of the Act's proscription. For example, because species is not the sole criterion, a finding that defendant's boa constrictor is life-threatening does not require a finding that all boa constrictors are life-threatening. Unfortunately, the Act does not provide the criteria with which to determine whether a par-

ticular reptile is life-threatening, nor does it authorize an administrative agency to promulgate regulations on the subject. In this sense, the Act is somewhat ambiguous.

However, we do not believe the ambiguity is of such magnitude that it renders the Act unconstitutional on its face. A statute is unconstitutionally vague on its face only if it provides no standard of conduct at all. (*People v. Haywood* (1987), 118 Ill. 2d 263, 270.) That is, the ambiguity is so pervasive that the statute is "incapable of any valid application." (*Steffel v. Thompson* (1974), 415 U.S. 452, 474, 39 L. Ed. 2d 505, 523, 94 S. Ct. 1209, 1223.) The Act clearly indicates that the legislature intended to prohibit ownership of those reptiles which, although not poisonous, are nonetheless life-threatening. We believe the term "life-threatening" is commonly understood to mean that which might possibly attack humans, and which is reasonably capable of killing humans in the event of such an attack. While the use of this term in the Act may cause confusion in some circumstances, the term is sufficiently clear to establish a standard of conduct. For example, defendant's expert testified that an alligator over eight feet long, and a constricting snake over 15 feet long could be considered life-threatening to adults. Therefore, as the Act is capable of some valid application, it is not void on its face, and we must consider whether it is unconstitutionally vague as applied to this case.

The State maintains that because defendant's snakes are part of the giant constricting snake family, a person of common intelligence would know that the snakes might be life-threatening. The State contends that by their nature, these snakes constrict to kill prey and to defend themselves against attack. The State does not argue that all giant constricting snakes are life-threatening, but rather that at some point defendant's snakes grew so large that they became capable of killing a hu-

man. The State's argument amounts to a prohibition of snakes over a certain, but unspecified, size.

Defendant, on the other hand, argues that the "temperament" of each individual reptile must be considered when determining whether that reptile is life-threatening. Defendant argues that his reptiles are docile, and are therefore less dangerous than similar reptiles in the wild. Defendant concedes that the statute clearly provides that domestication of dangerous animals is not a defense. (Ill. Rev. Stat. 1987, ch. 8, par. 242.) However, defendant argues that this domestication language only applies if the possession of an animal is prohibited under the statute. Because possession of nonpoisonous snakes is not prohibited unless the snakes are life-threatening, and because a determination of whether a particular snake is life-threatening depends on the characteristics of the individual animal, defendant argues that evidence of his reptiles' temperaments should be considered when determining whether the animals are life-threatening. We disagree.

One reason for the domestication language in the Act is that the animals included in the Act are presumed to behave unpredictably even when domesticated. The snakes themselves are not entitled to due process. Thus, even though defendant's snakes may be docile, they may be found to be life-threatening due to characteristics common to other members of their species. Moreover, courts would be unable to determine whether an individual reptile possessed a threatening temperament. Human psychology is an inexact science, and we see no reason to believe that reptile psychology is capable of a greater degree of accuracy. Therefore, under the Act, the temperament of each individual reptile may not be considered when determining whether that reptile is life-threatening. Rather, we find that a determination of

whether it is reasonably possible that an animal will attack humans must be made on a species-wide basis.

With respect to the snakes in this case, any potential threat to human life comes from the animal's ability to suffocate a person through constriction. Defendant argues that the possibility of this happening is remote at best. Defendant points to expert testimony that snakes are likely to constrict only as a means of killing prey, and that the snakes are capable of distinguishing between prey and nonprey. Defendant argues that because humans are not within the diets of the snakes, the snakes are unlikely to constrict around a human.

Regardless of the snakes' dietary preferences, we believe the testimony at trial showed that it is reasonably possible that the two 15- to 20-foot pythons would attack humans. The expert testimony showed it is possible that a snake could mistake a human for prey, and thus constrict around the person. Also, testimony showed that the snakes might constrict as a means of self-defense if they were gripped tightly. More importantly, both expert witnesses testified that they are aware of reports of incidents in which giant constricting snakes have killed children, although neither expert was familiar with the details of any of these incidents. We believe that this testimony shows that given the nature of giant constricting snakes, it is reasonably possible that these snakes would constrict around a human.

In addition, we believe that, due to their size, defendant's Burmese pythons are reasonably capable of killing a human if, in fact, they constrict around that person. Defendant's expert testified that a python 15 feet long could be considered life-threatening to adults, while the State's expert testified that constricting snakes are life-threatening when they reach 10 feet in length. Although the experts do not agree as to the minimum size at which a python would be considered capable of taking

human life, defendant's two pythons would be considered life-threatening under either standard established through expert testimony. Thus, defendant may properly be convicted under the Act, even though there exists some ambiguity as to whether the Act may be properly applied under a different set of facts. See, *e.g., People v. Garrison* (1980), 82 Ill. 2d 444, 454 (even if a statute is vague with respect to some other conduct, a defendant's due process rights are not violated if he is prosecuted for conduct which clearly falls within the proscription of that statute).

On the other hand, we believe the statute is too ambiguous to permit a conviction for possession of the seven-foot boa constrictor. Based on the above testimony, we find that the boa also has the requisite propensity to be considered life-threatening. However, according to the testimony of both expert witnesses, the boa was too small to be considered life-threatening. The only evidence that the boa was life-threatening came from the testimony of Louis Morgan, an animal welfare inspector with the Illinois Department of Agriculture, Bureau of Animal Welfare. Morgan testified for the State that regulations promulgated by the Department of Agriculture classify any constricting snake over six feet in length as life-threatening. However, the regulation Morgan referred to does not apply to the Act, and therefore is not dispositive of the issue. (See 12 Ill. Reg. 8265 (eff. May 2, 1988).) Due to the conflicting standards established by the testimony at trial, we find that a person of common intelligence would be required to guess as to whether the boa constrictor was life-threatening. Therefore, we hold the Act is unconstitutionally vague as applied to defendant's possession of the boa constrictor.

Finally, we find that the Act is not unconstitutionally vague as applied to defendant's possession of the alligator. We believe the evidence adduced at trial shows that

alligators as a species are life-threatening. Testimony at trial revealed that, as a species, it is reasonably possible that alligators will attack humans. In addition, testimony revealed that an alligator this size is capable of killing a small child. Lastly, unlike the snakes in this case, alligators may not be purchased legally in Illinois. See 12 Ill. Reg. 8265 (eff. May 2, 1988).

For the reasons stated, we reverse the decision of the appellate court. Because of its disposition of defendant's appeal, the appellate court did not address all the issues raised by defendant on appeal. Therefore, we remand the cause to that court for consideration of defendant's remaining claims.

*Judgment reversed;*
*cause remanded.*

JUSTICES CALVO, BILANDIC and HEIPLE took no part in the consideration or decision of this case.