117 Ill. App.3d 698 (1983)
453 N.E.2d 139
In re R.S., a Minor  (The People of the State of Illinois, Petitioner-Appellee,
v.
R.S., Respondent-Appellant).
No. 82-843.
Illinois Appellate Court  Third District.
Opinion filed August 31, 1983.
*699 *700 Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.
Gary L. Peterlin, State's Attorney, of Ottawa (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Reversed and remanded.
JUSTICE ALLOY delivered the opinion of the court:
A petition for adjudication of wardship was filed on August 2, 1982, which named the minor, R.S., and the minor's parents as respondents. The minor's address was the same as his father's, but his mother resided at a different address. The petition alleged that the minor was delinquent because he committed the offense of burglary. (Ill. Rev. Stat. 1981, ch. 38, par. 19-1(a).) No summons or service on any of the respondents appears in the record.
R.S. was taken into custody pursuant to a youth warrant. He was placed in the temporary custody of the La Salle County Probation Department from August 6, 1982, until August 18, 1982.
On August 11, 1982, the minor, his attorney, and the minor's father were present in court when an order of continuance was entered. The adjudicatory hearing was then set for August 18, 1982.
The minor, his father, and the minor's attorney were present in court on August 18, 1982. Once again the cause was continued. The court also ordered that the minor reside with his father rather than at the detention home until the hearing set for August 24, 1982. The record does not indicate what occurred during the August 24, 1982, *701 hearing or whether it took place.
The minor consented to an adjudication of delinquency on August 31, 1982. His father and counsel were present at the hearing. However, the minor subsequently made a motion to withdraw his consent. The motion was allowed on September 15, 1982, and the trial court vacated its order of adjudication and finding of contempt. The minor's father and attorney were present at the proceeding. September 22, 1982, was the date set for the adjudicatory hearing.
The adjudicatory hearing commenced as scheduled, although there is some confusion as to whether the hearing began on September 22 or 23, 1982. The common law record states September 22, 1982, as the date, while the report of proceedings states September 23, 1982. We will refer to the hearing as the September 22, 1982, hearing. The minor's father was not present on the first day of the adjudicatory hearing, although the minor and his attorney were there.
The hearing was continued until October 12, 1982, at which time the father was present in court with his son. Further proceedings were continued until October 13, 1982. The hearing was in progress on October 13, 1982, when the minor's father arrived. The hearing was then continued until October 21, 1982.
On October 21, 1982, the minor was adjudicated a delinquent. He was present in court and represented by his attorney, but his father was not present. The record indicates that the minor's father was injured in an automobile accident sometime between October 13 and 21, 1982. The father was hospitalized and unable to attend the hearing. The minor's aunt and uncle were present. They had custody of R.S. since the father's accident and had requested permission to attend the hearings, which the court granted.
A dispositional hearing was held on November 9, 1982. The minor and his attorney were present. Since the minor's father was still hospitalized, the minor's aunt and uncle attended the hearing. R.S. was committed to the Department of Corrections.
The State's evidence tended to establish that on July 25, 1982, at about 3 a.m., Larry's Universal Plumbing and Heating, located in Ottawa, Illinois, was burglarized. One of the owners of the business, James Hicks, testified for the State. He was in the building at the time of the break-in. Hicks identified R.S. as one of the people involved in the burglary. He said later in his testimony that he was "pretty sure" it was R.S. and that he could have picked R.S. out of a lineup if there had been one.
Billy Joe Joyce testified on behalf of the State. He admitted taking part in the burglary although he said he only acted as a look-out. *702 Joyce implicated R.S. and Keith Lambert in the incident.
Joyce testified that before he made the statement to the State's Attorney's office which implicated R.S. and Lambert, he was granted total immunity from prosecution on the instant offense. Another unrelated theft charge was reduced to criminal damage to property as well. Joyce admitted that he had prior convictions as a juvenile.
Following testimony from other witnesses, the State rested. At this time the trial judge called Keith Lambert as a court witness. Lambert was not listed as a State witness in discovery. The judge commented that he thought it unusual that Lambert had not been called to testify since Lambert had admitted being present at the crime scene during his adjudicatory hearing.
The judge asked Lambert if the minor herein was involved in the July 25, 1982, break-in. Lambert refused to answer. The judge admonished Lambert about contempt but still he did not answer. Lambert was held in contempt of court with the sentence reserved pending a determination of the R.S. matter.
The defense called several witnesses and presented an alibi defense. During the presentation of the minor's defense, the trial judge again called Lambert to testify. The judge admonished Lambert about sentencing on contempt findings. Lambert was then asked whether R.S. was an accomplice in the break-in and Lambert responded, "Yeah." Upon further questioning by the defense attorney, Lambert also implicated Billy Joe Joyce.
A final alibi witness for the defense was called. Closing arguments were held. R.S. was found to be delinquent and was made a ward of the court. He was subsequently committed to the Department of Corrections.
 1 The first issue raised by the minor in his appeal involves jurisdiction. He contends that the court's finding of delinquency and its adjudicatory and dispositional orders are void because the court lacked jurisdiction. (In re C.G. (1979), 69 Ill. App.3d 56, 387 N.E.2d 4.) There was no jurisdiction to enter the orders because the respondents were not served with notice of the proceedings as required by due process and the Juvenile Court Act. Ill. Rev. Stat. 1981, ch. 37, par. 701 et seq.
The lack of service of notice to the minor and his father did not deprive the court of jurisdiction. The minor was present during each hearing, accompanied by counsel. It is also apparent from the record that the minor's father was present at all but three of the hearings. While the father was not at the September 22, 1982, hearing, he had notice because he attended the September 15, 1982, hearing which *703 was continued until September 22, 1982. The father was unable to attend the October 21, 1982, and November 9, 1982, hearings because he was hospitalized from an automobile accident. However, he had sent his son to live with his brother and sister-in-law. The aunt and uncle attended the last two hearings.
 2 Under the Juvenile Court Act the minor and each respondent named in a case is to be individually served with notice, if possible. If service is not feasible, then service by publication is required. (Ill. Rev. Stat. 1981, ch. 37, pars. 704-3, 704-4.) However, section 4 (par. 704-4) does not demand useless formality. The father and the minor in the instant case, while not formally served, had actual notice of the proceedings. The minor was present throughout the hearings. His father was also present or had notice of the September 22, 1982, hearing he did not attend. The father was unable to attend the last two hearings. No one objected to the lack of formal service. The minor and his father waived formal service of process and submitted themselves to the jurisdiction of the court. In re J.W. (1981), 87 Ill.2d 56, 62, 429 N.E.2d 501, 504.
 3 The last part of the adjudicatory hearing on October 21, 1982, and the dispositional hearing on November 9, 1982, were not attended by R.S.'s father. The minor complains that his aunt and uncle, who had custody of him after his father was injured, were not named as respondents. They, too, had actual notice of the proceedings as they were present at these last two hearings. The aunt and uncle asked the court for permission to attend. They waived formal notification and submitted themselves to the jurisdiction of the court. In re J.W. (1981), 87 Ill.2d 56, 429 N.E.2d 501.
 4, 5 The minor argues that jurisdiction was still lacking because his mother, a named respondent with a known address, was not served with notice. He claims this service is a jurisdictional requirement.
Relying upon In re J.W. (1981), 87 Ill.2d 56, 429 N.E.2d 501, this court found that service of notice to a noncustodial parent is not a jurisdictional statutory requirement. (In re J.A. (1982), 108 Ill. App.3d 426, 439 N.E.2d 72.) The minor in the case at bar was in the custody of his father. While the record does not contain an actual court order granting custody to the father, an overall reading of the record indicates that actual, physical custody of the minor was with the father. The petition for adjudication lists the minor's address as that of the father; social records of the minor indicate custody with the father; and testimony during the hearings show that the father had custody of the minor. We also note that while the father was the custodial parent *704 at the time the petition was filed, the court ordered the minor to reside with the father at the August 18, 1982, hearing. The minor does not controvert the issue of custody but insists that service on the mother was required.
Since the father was the custodial parent, the mother did not have to be served with notice. The father had actual notice. Therefore, the court had jurisdiction to enter its orders.
 6, 7 The second issue raised by the minor is whether the trial judge exceeded the bounds of judicial propriety by assuming the role of prosecutor and considering evidence outside the record. This issue concerns the fact that the trial judge twice called Keith Lambert to testify as a court witness and elicited testimony from him which implicated the minor. The trial judge also made reference to Lambert's own admission of guilt, which was made during a separate court proceeding than the one at bar.
A trial judge may question witnesses in order to elicit the truth or to enlighten material issues that seem obscure. The propriety of such examinations must be determined by the circumstances of the case and rests largely in the discretion of the court. (People v. Costello (1981), 95 Ill. App.3d 680, 686, 420 N.E.2d 592, 596.) The trial judge should never depart from his role as a judge in conducting the examination, however, and assume the role of an advocate. People v. Wesley (1959), 18 Ill.2d 138, 163 N.E.2d 500.
 8 In the case at bar, the trial judge called Keith Lambert as a court witness. Lambert was not listed as a witness for the State in its discovery answer. The trial judge thought it was unusual that Lambert was not being called as a witness considering Lambert's involvement in the incident. Relying on the fact that Lambert had admitted his involvement during a previous court appearance on charges against Lambert, the judge believed that Lambert knew whether R.S. was a participant.
The trial judge held Lambert in contempt when he refused to answer the question put to him by the judge. Lambert was called back by the judge and admonished as to sentencing for contempt if Lambert would not purge himself by answering. Finally, Lambert admitted that the minor was an accomplice.
Under the circumstances, the trial judge exceeded the bounds of judicial discretion by calling Lambert to testify. Lambert was not listed as a State witness. The judge, knowing of Lambert's involvement because of the judge's knowledge of an earlier proceeding which was not part of the proceedings before the judge at this time, called Lambert to testify. Although the judge asked only one question of *705 Lambert, the response incriminated the minor. The judge helped establish the State's case against the minor. The judge commented that "absent the testimony of the second accomplice, the Court may have considered the evidence weaker in quality * * *." In this case the judge took on the role of prosecutor.
 9 The State argues that even if the trial judge abused his discretion by calling Lambert, the minor has waived the issue by failing to object at the trial level. However, the error complained of was so prejudicial to the minor that his right to a fair trial was denied. (People v. Beasley (1977), 54 Ill. App.3d 109, 369 N.E.2d 260.) Therefore, the issue is considered on appeal.
 10 The State contends that based on the testimony of James Hicks and Billy Joe Joyce, the error regarding Lambert did not substantially impair the minor's rights. We do not agree. Hicks' identification of the minor as one of the perpetrators was somewhat weak. Joyce admitted that he received immunity and had a charge reduced in another case in return for his statement incriminating the minor. The minor also presented testimony on alibi. If, in fact, evidence against the minor was as strong as the State contends, the trial judge would not have considered the testimony of Lambert so vital in determining whether the minor was involved. The judge must have held some reservations about the minor's guilt.
Based on the foregoing reasoning, the finding of delinquency, adjudication of wardship and dispositional order are reversed. The cause is remanded for a new adjudicatory hearing.
Reversed and remanded.
STOUDER, P.J., concurs.
JUSTICE HEIPLE, dissenting:
The majority is reversing this case because, in their opinion, the trial judge assumed the role of prosecutor by acting on his own initiative in calling the minor's accomplice to testify as a court's witness. According to the majority, the trial judge helped the State to establish its case. I disagree.
As the majority admits, a trial judge may question a witness in order to enlighten material issues that seem obscure and to elicit the truth. This is precisely what happened in the present case. A trial judge does not assume the role of prosecutor when, with proper foundation, he calls a single witness who can state with certainty whether or not the defendant committed the crime he was charged with.
*706 A court's witness may be called when the following foundation requirements are met: (1) One party is unwilling to vouch for the witness' credibility; (2) the testimony of the witness will relate to direct issues involved in the case, and; (3) the testimony is necessary to prevent a miscarriage of justice. (People v. DeFord (1978), 59 Ill. App.3d 942.) The general practice is for one of the parties to ask the trial judge to call a court's witness. However, there is nothing in the law which prevents a court from doing so on its own initiative, as in the present case, so long as a proper foundation is laid.
In People v. Moriarity (1966), 33 Ill.2d 606, the trial judge, on his own motion, called the defendant's wife to testify as a court's witness. The supreme court reversed, finding that the wife was called solely to provide an avenue for the hearsay testimony of another witness. Under these circumstances, the supreme court held that it was error to call the wife as a court's witness and that the trial court acted arbitrarily and without a proper foundation. The circumstances in the present case are just the opposite. The trial judge's decision to call Keith Lambert as a court's witness was reasonable and supported by an adequate foundation.
Before calling Lambert to the witness stand, the court made the following statement:
"For the record, the Court does not ordinarily enter in these matters by calling a witness, but it seemed highly unusual to me that someone who allegedly was involved in this thing with the minor and who, by his own admission in open Court, admitted that he himself was present on the night in question in which this controversy arose, I thought it highly unusual that that person not be brought in here by the people as a witness. They assured me there was good and valid reason for it and the voir dire just now conducted in Chambers with Mr. Lambert and the attorneys that I mentioned that were present in the courtroom, the Court found that while there was some justification for the people not to call the defendant there certainly wasn't any justification in my mind for not receiving his testimony."
From these remarks, it is clear that the court believed that the State did not wish to call Lambert as a witness and rely on his credibility. Lambert, as both the minor's accomplice and an eyewitness, knew whether or not the minor was present at the scene of the crime. And if the trial judge harbored some reservations about the minor's guilt (as the majority contends), then to acquit or convict him without hearing Lambert's testimony may have been a miscarriage of justice.
*707 I also do not believe that the trial judge exceeded the bounds of judicial discretion in questioning Lambert. The only question asked was whether the minor was with Lambert during the commission of the crime in question. At first, Lambert refused to answer. But after the court threatened to find him in contempt, Lambert returned the following day and gave a satisfactory answer. Both sides were then permitted to cross-examine. The judge said or did nothing to demonstrate partiality toward either party.
It is interesting to note that at the time Lambert was called, the court could not have known whether his testimony would help to convict or exonerate the minor. The court was simply trying to arrive at the truth and eliminate uncertainty. There was a proper foundation for calling Lambert as a court's witness and the judge remained impartial throughout the entire hearing. In short, there is no reason to reverse this case. Therefore, I dissent.