THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HENRY MOUNSON, Defendant-Appellant.

Third District   No. 3—87—0639

Opinion filed June 9, 1989.—Rehearing denied July 13, 1989.

Catherine Fitzsimmons, of State Appellate Defender's Office, of Ottawa, for appellant.

William Herzog, State's Attorney, of Kankakee (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant, Henry Mounson, was convicted following a jury trial of the offenses of felony murder and aggravated battery arising out of an altercation in the Kankakee County jail on February 27, 1986, which resulted in the death of Jerome Combs, a correctional officer on duty that evening. The circuit court of Kankakee County sentenced defendant to serve concurrent terms of 35 and 5 years, respectively, in the Department of Corrections. Defendant appeals from his conviction and sentence for felony murder.

The issues before us are: (1) whether the Illinois felony murder statute violates constitutional assurances of proportionate penalties and due process; (2) whether the fitness hearing at which defendant was found restored to fitness to stand trial violated minimum due process guarantees; (3) whether the evidence against defendant was too contradictory and confusing to support a finding of guilt of felony murder beyond a reasonable doubt; and (4) whether the sentencing court erroneously considered factors implicit in the offenses for which defendant was convicted. We affirm.

The State's case tended to establish that on the evening of Feb-

ruary 27, 1986, while residing at the Kankakee County Detention Center, defendant began waving a towel in front of one of the television camera monitors for the cellblock dayroom to attract the attention of the correctional officers then on duty. One of the officers, Della Hagler, turned on the intercom and asked defendant what he wanted. Defendant responded that he had been trying to get attention all day without success and then he threw the towel over the camera. He refused to remove it and challenged Hagler to come up to the cellblock and remove it herself.

Hagler solicited the assistance of the male officers on duty and proceeded upstairs to the cellblock with Officers Derrell Upton, Antonio Moran, Jerome Combs, and Walter Johnson, their supervisor. Defendant and one other inmate were in the dayroom when the officers arrived. Defendant cursed the officers monitoring the closed circuit television, demanded a cigarette and refused to return to his cell before 10 p.m. Defendant removed his shower slippers and grabbed a table. The male officers attempted to physically force defendant into his cell. Defendant resisted by kicking, bucking and grabbing onto the cell bars. The victim, Combs, was at defendant's feet as he, Moran and Upton attempted to carry the defendant, still struggling, in a prone position into a cell. Defendant kicked Combs in the chest and Combs collapsed. An expiration of air was heard, and the officers noticed that Combs was on the floor with his head against the cell bars, his eyes were glazed, and he was not breathing.

The officers' resuscitation efforts proved futile, as did those of the paramedics who were called to the scene. Combs was pronounced dead upon his arrival at the hospital. The Kankakee County medical examiner, Dr. James Blanding, determined that Combs died from asphyxiation due to aspiration of gastric contents. Blanding's autopsy also revealed that Combs—a 24-year-old, weighing about 250 pounds and about 6 feet 2 or 3 inches tall—had an enlarged, diseased heart; but Blanding found no indication that the heart had malfunctioned or was related to Combs' death.

Defendant was charged with murder in two counts—based on a killing by conduct which defendant knew created a strong probability of death or great bodily harm (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2)) (count I), and while attempting and committing the forcible felony of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)) (count II). Defendant was also charged with aggravated battery in two counts—based on knowingly and intentionally causing bodily harm to Jerome Combs, knowing Combs to be a correctional

institution employee engaged in the execution of his official duties (Ill. Rev. Stat. 1985, ch. 38, pars. 12—3(a)(1), 12—4(b)(6)) (count III), and knowingly and intentionally making physical contact of an insulting and provoking nature with Derrell Upton, Antonio Moran and Walter Johnson, knowing them to be correctional institution employees engaged in the execution of their official duties (Ill. Rev. Stat. 1985, ch. 38, pars. 12—3(a)(2), 12—4(b)(6)) (count IV). At defendant's request, the jury was also instructed and given verdict forms on the offenses of involuntary manslaughter and reckless conduct. The jury found defendant not guilty of murder as charged in count I and not guilty of either involuntary manslaughter or reckless conduct. Defendant was found guilty of felony murder as charged in count II and of aggravated battery as charged in counts III and IV.

In this appeal, defendant argues that the felony murder statute, as applied to aggravated battery, is unconstitutional. Defendant posits that the mental state for felony murder as charged in this case is less culpable than that of involuntary manslaughter, and, since the sentencing scheme for the former, a Class X offense, is disproportionate to that for the latter, a Class 3 felony, the statute cannot withstand scrutiny under the due process and proportionate penalty clauses of the Illinois and Federal Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §§2, 11). In support of his argument, defendant cites to our supreme court's opinion in *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512.

Constitutional challenges to the felony murder statute as applied to aggravated battery were generally rejected by this court in *People v. Carpi* (1976), 44 Ill. App. 3d 364, 358 N.E.2d 355. Nonetheless, because defendant's argument based on *Wisslead* places a slightly different slant on the issue, we choose to reassess our views in the context here presented. In *Wisslead*, defendant was charged with unlawful restraint and armed violence predicated on unlawful restraint. The court, in finding that the armed violence statute violated constitutional guarantees of due process and proportionate penalties, compared the offense of armed violence with the offenses of aggravated kidnaping and forcible detention. The court noted that when the presence of a gun was added to unlawful restraint, a Class 4 felony, the offense could be charged as armed violence, a Class X felony. However, when the same weapon was added to a more serious predicate offense—kidnaping, a Class 2 felony—the offense became aggravated kidnaping, a Class 1 felony. Similarly, the offense of forcible detention, a Class 2 felony, includes all of the elements of armed violence predicated on unlawful restraint, but carries a lesser

penalty than the Class X offense of armed violence.

In this case, the mental state of simple battery, a Class A misdemeanor, is intentionally or knowingly causing bodily harm or making physical contact of an insulting or provoking nature. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a).) Simple battery is enhanced to aggravated battery when the defendant further knows that the individual harmed is a correctional institution employee. (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(6).) When the element of the individual's death is added, the offense becomes felony murder. The mental state for involuntary manslaughter, by comparison, is recklessness. (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).) By definition, recklessness as applied here is conscious disregard of a substantial and unjustifiable risk that great bodily harm or death will result. Ill. Rev. Stat. 1985, ch. 38, par. 4—6.

Defendant contends that the "conscious disregard" mental state as applied to involuntary manslaughter is necessarily a more culpable mental state than the "intentional or knowing" mental state as applied to aggravated battery. Since the jury found defendant not guilty of involuntary manslaughter, the argument continues, it would be illogical to sustain a conviction for felony murder because that offense carries with it a greater penalty even though it is based on a less culpable mental state.

Defendant's argument proceeds from the faulty premise that recklessness as applied here is in fact a more culpable mental state than that required for the predicate offense for felony murder, *i.e.,* aggravated battery. Initially, we do not agree that the mental state element for aggravated battery as applied here is derived solely from the definition of simple battery. Indeed, the battery of a correctional institution employee would not support a charge of aggravated battery under section 12—4(b)(6) without the additional mental state element of the accused's knowledge that such employee is a correctional officer engaged in his official duties. Thus, the enhancement from simple battery to aggravated battery is not, as defendant would suggest, based solely on the status of the victim, but is based as well upon defendant's knowledge of the victim's status. We find, therefore, that the enhanced mental state of knowingly or intentionally committing a battery of a correctional institution employee known to be engaging in his official duties is not less culpable than consciously disregarding a substantial risk that one's acts will result in death or great bodily harm.

Moreover, unlike the situation in *Wisslead,* when we compare the sentencing schemes for involuntary manslaughter and aggra-

vated battery we find that the two offenses are not, in fact, dispro-
portionately penalized. Both offenses are Class 3 felonies. It is not,
therefore, incongruous that when death results during an aggravated
battery, the offense is punished more severely than if defendant had
acted recklessly and the victim had not been known to be a correc-
tional officer engaged in his official duties. Accordingly, defendant's
constitutional challenge must fail.

Defendant next contends that the hearing at which he was found
restored to fitness to stand trial deprived him of his right to due
process of law. Prior to trial, in May of 1986, defendant's retained
counsel, attorney Earl Washington, indicated to the court that he
was experiencing difficulty gaining the cooperation of defendant and
that defendant's conduct was such as to call into question his mental
capacity. Accordingly, the court appointed Dr. Erwin Baukus to ex-
amine defendant. At a subsequent hearing on fitness, Dr. Baukus di-
agnosed defendant's condition as "anti-social personality disorder."
He described defendant as too impatient and too impulsive to coop-
erate in his defense with his attorney. Based on Dr. Baukus' prior
association with defendant, he opined that with treatment defendant
could be expected to be restored to fitness within a year. The court,
accordingly, found defendant unfit to stand trial and remanded him
to the Department of Mental Health and Developmental Disabilities
for proper placement and treatment.

On April 21, 1987, the matter was recalled for a hearing on fit-
ness. On that date, defendant appeared without counsel. The court
noted that the Department of Mental Health had reported that
defendant was restored to fitness and asked defendant if he had
talked to attorney Washington. Defendant said he had not, but he
thought Washington was still representing him. The matter was con-
tinued. On June 5, attorney Washington appeared on defendant's be-
half. Washington declined the court's offer of another hearing, as
did the State's Attorney, and both counsel stipulated to a March 5,
1987, report of Dr. Percival Tiongson, a staff psychiatrist with the
Chester Mental Health Center. A portion of the report was read
into the record: "Mr. Mounson has currently attained his fitness for
trial and therefore I recommend that he be referred back to the le-
gal system." The court accepted the parties' stipulation to the re-
port, found defendant fit to stand trial and set the date for his trial.
Attorney Washingson subsequently withdrew his appearance, and
defendant proceeded to trial represented by appointed counsel.

Relying on precedent condemning the trial court's acceptance of
a stipulation to a doctor's conclusion that a defendant is fit for trial

(see, *e.g.*, *People v. Thompson* (1987), 158 Ill. App. 3d 860, 511 N.E.2d 993), defendant asks that his convictions be reversed and his cause be remanded for a new inquiry into his fitness to stand trial.

In *Thompson*, this court granted the relief here requested for failure to meet minimal due process standards in a fitness hearing. We there stated:

> "[T]he parties simply stipulated to the findings of the two doctors contained in the reports and to their conclusion that the defendant was fit to stand trial. Unlike the situation in *Lewis* [*People v. Lewis* (1984), 103 Ill. 2d 111, 468 N.E.2d 1222], the parties here did not stipulate that, if called to testify, qualified psychiatrists or psychologists who had examined the defendant would testify that in their opinion the defendant was fit to stand trial. Instead, the parties stipulated to, and the judge accepted, the conclusion that the defendant was fit to stand trial. The distinction is a fine one, we agree, but it is one drawn by our Illinois Supreme Court in *Lewis*." 158 Ill. App. 3d at 864, 511 N.E.2d at 996.

This court further noted that it was clear from the record in *Thompson* that the trial court did not in fact exercise its discretion at the restoration hearing, did not even review the reports, and that the court's decision of fitness was based solely on the parties' stipulation. We also believe it noteworthy that defendant's mental illness was an integral factor in the defense of Thompson's cause. Although the nature of Thompson's mental condition does not appear in the opinion, Thompson entered a plea of guilty but mentally ill to the charge of armed violence within four months of his restoration hearing.

■ Having reviewed the record presently before us, we find that this case falls on the other side of the "fine line" defined in *Thompson*. Here, it is clear that the trial court had received Dr. Tiongson's report prior to April 21, 1987, and had reviewed it. The court briefly questioned defendant and received responsive, nonhostile replies. On June 5, the trial court accepted counsel's stipulation to the psychiatrist's report—not merely his conclusion. The court then made its finding of fitness. Because defendant's "mental condition," as described by Dr. Baukus at the 1986 hearing, was in the nature of a personality disorder, the court was in a position to weigh the psychiatrist's March 5, 1987, report and reach its determination of defendant's fitness based not only on the stipulated report, but on the court's independent, in-court observations as well. The record further demonstrates that defendant was able to consult with

and cooperate with his appointed counsel after attorney Washington withdrew from the case. Under the circumstances, we conclude that the restoration hearing in this case did not offend minimal due process guarantees and further inquiry into defendant's fitness to stand trial is not warranted.

Defendant next challenges his conviction on the ground that the evidence against him was so confusing and fraught with contradictions that it failed to prove his guilt beyond a reasonable doubt. It is true that the various occurrence witnesses did not concur with one another as to several details in their accounts of the events leading up to Combs' death. Their recollections differed in insignificant respects and reflected the witnesses' various perspectives in seeing and hearing the altercation that evening. The witnesses were cross-examined, and the inconsistencies were well probed by defense counsel. In defense of the charges, defendant introduced Dr. Craig Travis, a board-certified emergency physician, who testified that, in his opinion, Combs had died of a heart attack. Dr. Travis was not a pathologist and he had neither examined the victim nor attended the autopsy. His opinion was based only on his review of the medical examiner's report and the emergency report made after Combs was received at the hospital.

■■ ■ It is well established in this State that "[i]f the decision of the trier of fact is to convict, and if that decision is based on credible and substantial evidence, it will not be set aside because of minor inconsistencies which the trier of fact resolved in favor of the State." (*People v. Boone* (1988), 180 Ill. App. 3d 98, 107, 534 N.E.2d 1266, 1271, citing *People v. Devine* (1981), 101 Ill. App. 3d 158, 163, 427 N.E.2d 1277.) In this case it was the province of the jury, as finder of fact, to determine whether the witnesses were worthy of belief. On review of the record before us, we do not find the various witnesses' testimony so unsatisfactory or incredible as to leave a doubt of defendant's guilt. The jury was entitled to accept the State's expert testimony as to the cause of Combs' death over defendant's expert witness. Accordingly, we affirm defendant's conviction.

Lastly, defendant argues that the sentencing court improperly considered factors implicit in the offenses for which he was convicted. Defendant prays for a reduction of his 35-year sentence. Again, we have painstakingly reviewed the record of the court proceedings and find that we must reject defendant's position. The court prefaced its sentencing decision with the observation that certain statutory factors in mitigation (Ill. Rev. Stat. 1985, ch. 38, par.

1005—5—3.1) are the converse of statutory factors in aggravation (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2). The court then reviewed the statutory factors in mitigation and found them generally wanting. In rejecting the first factor in mitigation, the court observed that defendant's conduct did cause or threaten serious physical harm to another—it left one man dead. The court proceeded to consider other relevant factors in mitigation before turning to the factors in aggravation. Then, the court expressly found that defendant's extensive history of criminality, together with the need to deter others and the lack of any possibly mitigating evidence, warranted a substantial term of imprisonment.

■ While under other circumstances the sentencing court's recitation of its reasons for rejecting statutory factors in mitigation might be so interwoven with the court's consideration of factors in aggravation as to require remandment for a new sentencing hearing, we do not find this to be such a case. Based on our review of that portion of the record here complained of within the context of the court's entire sentencing decision, we find that the sentencing judge was merely expressing his reasons for determining that no mitigating circumstances were present. (See *People v. Adams* (1988), 168 Ill. App. 3d 588, 590, 522 N.E.2d 819, 821 ("The court's explicit rejection of *** mitigating factors neither was equivalent to aggravating with those factors nor was improper under *Conover* [*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906]").) The court's conclusion in this regard, coupled with permissible factors found in aggravation, support the court's decision to impose a sentence of imprisonment on the high side of the range statutorily allowed. In sum, we find no abuse of the sentencing court's discretion in setting a 35-year term in this case.

The judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.