THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH LIBERMAN, Defendant-Appellant.

Fourth District   No. 4—91—0038

Opinion filed April 30, 1992.

STEIGMANN, J., specially concurring.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

After a jury trial, defendant Joseph Liberman was convicted *in absentia* of trafficking of a controlled substance containing cocaine weighing more than 100 grams but less than 400 grams under the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 1100 *et seq.*). He thereafter appeared and was sentenced to 22 years' imprisonment. Defendant appeals, contending (1) he was improperly charged under section 401.1 of the Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1) because the statute failed to provide a penalty for the amount of cocaine he was found to possess; (2) the trial court erred in asking a question of a key State witness; (3) the testimony of a State's witness regarding a fight between witness and defendant was so prejudicial as to deprive him of his right to a fair trial; and (4) in sentencing him, the trial court improperly considered a factor inherent in the offense as a factor in aggravation.

## I. FACTS

The first witness at trial was Cindy Jameson, defendant's girlfriend at the time of the offense. Defendant and Jameson lived together in Jameson's home. Jameson testified that on September 12, 1988, she became upset with defendant because he was taking drugs in her home. Defendant and Jameson became engaged in a fight and she told him to leave. Defendant then went to a compartment where he had stored a tackle box, took this tackle box to a bedroom, and shut the door.

Jameson then testified that she heard noises coming out of the bedroom. She became suspicious and opened the door. She saw defendant "doing a line of cocaine." She also saw a large bag of "powdery stuff" and cash.

Jameson asked what was going on and defendant replied it was "coke" (cocaine) and stated it was "what he made his living at." Defendant slammed the tackle box shut and locked it. A struggle ensued for possession of the tackle box. Jameson managed to wrestle the tackle box away from defendant and she then took the box to a neighbor's house for safekeeping.

Later, Jameson phoned defendant and told him to remove his possessions from her house. Defendant arrived at Jameson's home to re-

move his possessions and begged Jameson to return the tackle box. When she refused, another fight began and Jameson called the police.

The police arrived and oversaw defendant removing his possessions from the home. Jameson then took the police officers to her neighbor's home and gave the tackle box to the police.

The police took custody of the tackle box and obtained a search warrant. The tackle box contained $1,600 in cash, a bag containing cocaine mixed with other cutting agents, and miscellaneous items. An expert testified at trial that the cocaine mixed with other cutting agents weighed 164 grams. The expert also testified that this mixture was 64% pure (plus or minus 7%). (This translates into approximately 105 grams of cocaine.)

On October 8, 1988, defendant was taken into custody and given his *Miranda* warnings. Defendant admitted receiving shipments of cocaine from Rowan, a friend from Florida. Defendant would sell the cocaine and return the resulting money to Rowan. On October 26, 1988, defendant recounted these transactions in greater detail. Defendant specified amounts of cocaine that were shipped to him, as well as the amounts of money he returned to Rowan. Rowan testified at trial and verified the nature of the transactions which took place between himself and defendant. Upon this evidence, the jury found defendant guilty and this appeal followed.

## II. CHALLENGE TO CHARGE AND CONVICTION
### UNDER SECTION 401.1 OF THE ACT

On February 7, 1989, defendant was charged by complaint with controlled substance trafficking in violation of section 401.1 of the Act, in that on or about September 12, 1988, he knowingly and without lawful authority caused to be brought more than 100 grams but less than 400 grams of a substance containing cocaine, a controlled substance, into the State of Illinois with the intent to deliver it. At trial, the jury determined that defendant brought 105 grams of this controlled substance into the State with the requisite intent. By post-trial motion, defendant argued he was improperly charged under section 401.1 of the Act because that section does not provide a penalty for the amount of cocaine he was found to possess, *i.e.*, 105 grams. The trial court denied defendant's motions, and defendant renews this challenge to the conviction on appeal.

### A. *The Statutory Framework*

The offense of controlled substance trafficking was added to the Act by Public Act 85—743 (Pub. Act 85—743, §2, eff. Sept. 22, 1987

(1987 Ill. Laws 3160, 3164)). Denominated section 401.1, it provided an enhanced penalties provision whereunder the sentencing range authorized by section 401 of the Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401) was doubled:

> "(b) A person convicted of controlled substance trafficking *shall be sentenced to a term of imprisonment not less than twice the minimum term* and fined an amount as *authorized by Section 401* [(Ill. Rev. Stat. 1987, ch. 56½, par. 1401)] of this Act, based upon the amount of controlled or counterfeit substance brought or caused to be brought into this State, *and not more than twice the maximum term of imprisonment* and fined twice the amount as *authorized by Section 401* of this Act, based upon the amount of controlled or counterfeit substance brought or caused to be brought into this State." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(b).

When section 401.1 was added to the Act, section 401—making it unlawful for any person to knowingly manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance—defined the class of the offense, from the most to the least serious, based on the amount and type of drug involved. (See Ill. Rev. Stat. 1987, ch. 56½, par. 1401 (text eff. until July 1, 1988).) As to substances containing cocaine, for example, section 401(a)(2) provided that commission of the offense involving "15 grams *or more* of any substance containing cocaine [(emphasis added)]" was a Class X felony (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)); subsection (b)(2) made commission of the offense involving "more than 1 gram but not more than 15 grams" of such substance a Class 1 felony (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)), and subsection (c) made commission of the offense based on "any other amount" of a Schedule II narcotic drug—which cocaine is (see Ill. Rev. Stat. 1987, ch. 56½, pars. 1206(b)(4), 1102(aa)(4))—a Class 2 felony (see Ill. Rev. Stat. 1987, ch. 56½, par. 1401(c)).

In Public Act 85—1003 (Pub. Act 85—1003, §3, eff. July 1, 1988 (1987 Ill. Laws 4710, 4716, 4719)), on November 6, 1987, the legislature added a provision providing in pertinent part for stiffer sentences for those convicted of violating section 401(a)(1) (heroin), (a)(2) (cocaine), (a)(3) (morphine), or (a)(7) (lysergic acid diethylamide (LSD)), than those which could otherwise have been imposed under section 5—8—1 of the Unified Code of Corrections (Code) (see, *e.g.*, Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3) (not less than 6 nor more than 30 years for a Class X felony))—all based on the amount of the

substance involved. This added provision, mistakenly identified in Public Act 85—1003 as section 401.1, provided as follows:

"Sec. 401.1 [(amended by the effective date to read section 401.2)]. Any person who violates paragraph (1), (2), (3) or (7) of subsection (a) of Section 401 with respect to the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (b), (c), (d), (e), (f) or (g) of Section 401 to the contrary, is guilty of a Class X felony and shall be sentenced to a term of imprisonment as follows:

(1) *not less than 9 years and not more than 40 years with respect to 100 grams or more but less than 400 grams*;

(2) not less than 12 years and not more than 50 years with respect to 400 grams or more but less than 900 grams;

(3) not less than 15 years and not more than 60 years with respect to 900 grams or more;

(4) any person sentenced with respect to paragraph (1), (2) or (3) above may be fined an amount not more than the full street value of the controlled or counterfeit substance or controlled substance analog. The term 'street value' shall have the meaning ascribed in Section 110—5 of the Code of Criminal Procedure of 1963." (Emphasis added; italics omitted.) (1987 Ill. Laws 4710, 4719.)

In addition, Public Act 85—1003 amended section 401 in pertinent part as follows, again mistakenly referring to the above-quoted new provision as section 401.1:

"*Except as provided in Section 401.1*

[(amended by the effective date to read section 401.2)] any person who violates this Section with respect to:

(a) the following amounts of controlled or counterfeit substances *** is guilty of a Class X felony. ***
***

(2) 15 grams or more *but less than 100* [grams] of any substance containing cocaine, or an analog thereof." (Emphasis in original to denote new matter.) 1987 Ill. Laws 4710, 4717.

See also Ill. Rev. Stat. 1987, ch. 56½, pars. 1401.1 (as added by Pub. Act 85—1003), 1401 (effective July 1, 1988).

Thereafter, in Public Act 85—1030, on June 30, 1988, the legislature corrected the above-referenced numbering errors made in Public Act 85—1003, designating the newly added section as section 401.2, and amending section 401 to refer to the renumbered section 401.2 (Pub. Act 85—1030, §4, eff. July 1, 1988 (1988 Ill. Laws 200, 207,

205)). (See Ill. Rev. Stat., 1988 Supp., ch. 56½, pars. 1401.2, 1401.) Given the irreconcilable conflict between these two acts, Public Act 85—1030 must be regarded as controlling because it was passed last. (Ill. Rev. Stat. 1989, ch. 1, par. 1105.) It is the text of these provisions, sections 401.1, 401, and 401.2 (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1; 1988 Supp., ch. 56½, pars. 1401, 1401.2), with which we are concerned.

We note, however, as have the parties, that by the time defendant was sentenced herein in April 1990, the legislature had repealed section 401.2 and incorporated its provisions into section 401 of the Act (see, e.g., Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)(B) (text as amended by Public Acts 86—266, §1, effective Jan. 1, 1990 (1989 Ill. Laws 1893); 86—442, §1, effective Jan. 1, 1990 (1989 Ill. Laws 2681, 2682)) (not less than nine nor more than 40 years with respect to 100 grams or more but less than 400 grams of a substance containing cocaine)).

### B. *Analysis*

Defendant's argument is basically as follows: (1) section 401.1 of the Act, under which he was charged and convicted, does not contain its own penalty provisions and instead refers specifically—and only—to the penalties authorized by section 401 of the Act (see Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(b); 1988 Supp., ch. 56½, par. 1401); (2) he was charged with having brought more than 100 grams but less than 400 grams of a substance containing cocaine into the State with the requisite intent; (3) section 401, at the time of the offense, that being September 1988, did not specifically delineate within its terms a penalty for committing the offense in the amount of 100 grams or more; (4) since section 401(a)(2) enumerated penalties "only for '15 grams or more but less than 100 grams of any substance containing cocaine'" (see Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1401(a)(2)), sections 401.1 and 401 "only" provide penalties for an offense of cocaine trafficking in the amount of 15 grams or more but less than 100 grams, above which point, by the specific language of the statute, the offense ceases to be trafficking; (5) because, he argues, his conduct as charged "did not fall within [section 401(a)(2)], the first hurdle of [section 401.2] was not satisfied and, as a result, the subsequent sentencing guidelines are not reached to be incorporated into [section 401] for trafficking of over 100 grams of cocaine"; (6) the State's Attorney could have charged him for trafficking in an amount less than 100 grams of cocaine (see Ill. Rev. Stat. 1987, ch. 56½, pars. 1401.1; 1988 Supp., ch. 56½, par. 1401(a)(2)), or for possession of 100 grams or

more but less than 400 grams of cocaine (see Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1402.1(1)); and (7) because he could not "legally" be convicted under section 401.1 for trafficking in an amount over 100 grams of cocaine, his conviction cannot now be reduced to trafficking a lesser amount of cocaine stemming from the same act, although on retrial, the State could prosecute him for having violated other "valid" criminal laws.

Defendant relies primarily upon *People v. Chandler* (1989), 129 Ill. 2d 233, 543 N.E.2d 1290. There, after defendant's conviction for residential burglary and murder, the trial court found defendant eligible for a death sentence, although residential burglary was not listed as a crime which could be used to support the felony-murder doctrine. The trial court reasoned that its exclusion was merely a legislative oversight. Although burglary was enumerated as one of the felonies which could support the death penalty and residential burglary was arguably a more egregious crime, the supreme court strictly construed the statute while acknowledging:

> "Although it may seem peculiar that the legislature did not include residential burglary in the list of felonies which make a defendant eligible for death if the victim was killed during one of them, this court cannot uphold a death sentence through our affirmative act of reading the words 'residential burglary' into the murder statute." (*Chandler*, 129 Ill. 2d at 254, 543 N.E.2d at 1299.)

We find *Chandler* inapposite. There, the supreme court refused to read the words "residential burglary" into the murder statute, thereby refusing to "create" a new felony for which a death penalty could be imposed under the felony-murder doctrine. By contrast, we need only construe the intent of the legislature by looking to the statutory language.

■ It is apparent that the legislature added section 401.1 to the Act by Public Act 85—743 to criminalize controlled substance trafficking, and it very clearly intended to provide an enhanced sentencing range for those who brought such substances into the State for the requisite purpose and with the requisite intent. Defendant basically questions whether the language added to open the second full paragraph of section 401, "Except as provided in Section 401.2" (Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1401), incorporates the provisions of section 401.2 (Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1401.2) in their entirety for purposes of prosecution on charges of controlled substance trafficking under section 401.1 of the Act. He argues that it does not and that, because (1) section 401 did not specifically enumer-

ate the amounts of controlled substances and corresponding penalties as set forth in section 401.2, and (2) section 401.1 refers only to section 401 and not to section 401.2, he was never given notice of the penalty provisions of section 401.2 of the Act. We disagree.

This is a question of statutory construction and legislative intent. While criminal statutes must be construed strictly in favor of the accused (*Chandler*, 129 Ill. 2d at 254, 543 N.E.2d at 1299), they should not be so strictly construed as to defeat the intent of the legislature. (*People v. Goldstein* (1990), 204 Ill. App. 3d 1041, 1044-45, 562 N.E.2d 1183, 1185.) In construing a statute, the courts consider the language used by the statute, the reasons and necessity for the law, the evils to be remedied, and the object and purposes to be attained. (See, *e.g.*, *People v. Steppan* (1985), 105 Ill. 2d 310, 316, 473 N.E.2d 1300, 1303.) The statute must be construed in its entirety in such way as to give effect to the legislative intent. *People v. Maya* (1985), 105 Ill. 2d 281, 285, 473 N.E.2d 1287, 1289.

In amending section 401 and adding section 401.2 in 1988, the legislature intended to impose stricter penalties on those convicted of the manufacture or delivery of controlled substances in larger amounts. If a defendant were convicted of the manufacture or delivery of a controlled substance in a larger amount than those for which the class of felony was stated in section 401, that section referred to section 401.2, which enumerated increased sentencing ranges based on the amount of substance involved. Defendant maintains that because the controlled substance trafficking provision, section 401.1, refers only to the penalties authorized in section 401, we are restricted to the specific penalties and amounts delineated therein, and the legislature has not authorized the courts to look to section 401.2 of the Act.

The legislature intended to provide greater penalties for those convicted of the manufacture or delivery of a controlled substance in larger amounts, hence section 401.2; and the legislature intended to provide enhanced penalties, *i.e.*, a doubled sentencing range, for those convicted of trafficking in a controlled substance, regardless of the amount, hence section 401.1(b). To construe these statutory provisions otherwise would be illogical. Courts, in considering legislative intent, must presume that the legislature did not intend absurdity, inconvenience or injustice, and select an interpretation of the statute which leads to logical results and avoids that which would be absurd. *Steppan*, 105 Ill. 2d at 316, 473 N.E.2d at 1303.

Were this court to adopt the defendant's argument *in toto*, section 401.1 would be construed to provide an enhanced penalty for traffick-

ing in cocaine in amounts less than one gram, more than one gram but less than 15 grams, and more than 15 but less than 100 grams, but no further enhancement of penalty for trafficking in amounts of 100 grams or more.

It is fundamental that statutes are to be construed so that no word, clause or sentence is rendered meaningless or superfluous. (*People v. Fierer* (1988), 124 Ill. 2d 176, 192, 529 N.E.2d 972, 978; *People v. Chevalier* (1987), 159 Ill. App. 3d 341, 347, 512 N.E.2d 1001, 1005.) Absent statutory definitions indicating a different result, words in a statute are to be given their ordinary and popularly understood meaning. (See *People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 15, 585 N.E.2d 51, 57.) The language of section 401 of the Code, "Except as provided in section 401.2" (Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1401), must also be given effect. The term "except" has been defined as: "Other than." (Ballentine's Law Dictionary 425 (3d ed. 1969); see also Black's Law Dictionary 501 (5th ed. 1979).) In context, the phrase incorporated the penalty provisions of section 401.2.

The language of section 401 defined the offense of manufacture and delivery, and designated the class of felony attaching to commission of the offense based on varying amounts of enumerated substances; as to these, the sentencing ranges stated in section 5—8—1 of the Code adhere (see Ill. Rev. Stat. 1989, ch. 38, pars. 1005—8—1(a)(3) through (a)(6)). Section 401.2 was based upon the offense of manufacture or delivery as defined in the opening paragraph of section 401, and but delineated the increased sentencing ranges applicable based on committing the offense as to greater quantities of drugs. The enhanced penalties provided in section 401.1(b) apply to the offenses contained in both sections 401 and 401.2.

Defendant's contention that section 401.1 is a nullity is untenable; it provided both a prohibition and a penalty, and defendant was properly convicted thereunder.

### III. JUDGE'S QUESTION

Defendant contends that the trial judge committed reversible error when he asked a question of a key State's witness, thus abdicating his neutral role and assuming the role of an advocate. We disagree.

Witness Jameson testified and was cross-examined. At the conclusion of this questioning, the judge asked Jameson: "[The] Joseph Liberman that you referred to, is that the Defendant in this case?" The judge asked no other questions and made no other comments.

It is clear that a judge has the right to question witnesses in order to elicit the truth. (*People v. Hopkins* (1963), 29 Ill. 2d 260, 265, 194 N.E.2d 213, 216.) A judge may also question a witness to bring enlightenment on material issues, as long as this is done in a fair and impartial manner without showing bias or prejudice against either party. *People v. Marino* (1953), 414 Ill. 445, 450, 111 N.E.2d 534, 537.

In the cases wherein the judge has been found to have assumed the role of an advocate, the judge's acts of impropriety far exceeded the single question posed here. Defendant relies primarily on *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 293 N.E.2d 692, and *In re R.S.* (1983), 117 Ill. App. 3d 698, 453 N.E.2d 139, *aff'd on other grounds sub nom. People v. R.S.* (1984), 104 Ill. 2d 1, 470 N.E.2d 297. However, both cases are distinguishable, as they involve a judge calling witnesses and accusing witnesses of lying (*Cofield*, 9 Ill. App. 3d at 1049-50, 293 N.E.2d at 693), and a judge calling a witness who was on neither party's witness list and having information from a previous case (*R.S.*, 117 Ill. App. 3d at 704, 453 N.E.2d at 143).

The trial judge merely attempted to clarify that the "Joseph Liberman" Jameson referred to in her testimony was in fact the defendant. Jameson could not identify the defendant in person because the trial was *in absentia*. The propriety of a judicial examination must be determined by the circumstances of each case. (*Cofield*, 9 Ill. App. 3d at 1050, 293 N.E.2d at 694.) A trial judge may question a witness to clarify or fill certain gaps in a witness' testimony. (*Hopkins*, 29 Ill. 2d at 265, 194 N.E.2d at 216.) The judge's clarification of this witness' testimony was not error.

### IV. OTHER CRIMES EVIDENCE

Defendant next maintains that Jameson's description of defendant's violent acts and her description of defendant's drug dealing amount to reversible error.

Evidence of other crimes is admissible to prove *modus operandi*, intent, identity, motive, or absence of mistake. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182, 449 N.E.2d 821, 824.) However, this list should not be considered as exclusive or taken to mean that these are the only purposes for which testimony of other crimes may be admitted. (*People v. Stewart* (1984), 105 Ill. 2d 22, 61-62, 473 N.E.2d 840, 860.) Instead, evidence of other crimes is admissible if it is relevant for any purpose other than to show the propensity to commit crime. (*McKibbins*, 96 Ill. 2d at 182, 449 N.E.2d at 824.) This court has recognized that other crimes evidence is admissible if offered as part of

the narrative of the offense. *People v. Waller* (1990), 195 Ill. App. 3d 376, 379, 552 N.E.2d 351, 352.

■ Here, Jameson testified as to the struggle for the tackle box in question and the circumstances which led to this struggle. Jameson's testimony cannot be said to have been offered to show defendant had a greater propensity to commit the crime charged. As a part of an ongoing narrative, it was properly admitted under *Waller*.

## V. Sentencing

Defendant next argues the court erred in considering as an aggravating factor in sentencing that his conduct was the type which could have caused serious harm to another person (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(1)), a factor inherent in the offense. It is contended that there was no evidence of any harm or potential for harm beyond that which it is reasonable to conclude that the legislature had already taken into consideration in establishing the penalty for the crime. The record indicates that at the original sentencing hearing the judge did not consider this an aggravating factor. The only statement at the original sentencing hearing which is relevant to this alleged error is as follows:

"THE COURT: ***

Mr. Liberman, do you have anything that you desire to state to the Court at this time other than what you've stated before?

THE DEFENDANT: No, Your Honor, I don't.

THE COURT: I don't think this is a case for the minimum sentence of 18 years, based upon his prior record. I've been going through the factors that are in mitigation. I'm looking at a factor in mitigation 5—553.12 [*sic*], the Defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another. Well, there could be argument made that the sale of cocaine could result in serious physical harm to another, but I don't know that this Defendant can be charged with that knowledge necessarily."

At the subsequent hearing on the motion to reduce sentence, the judge made the following statement:

"The activities that preceded the conduct upon which this charge was based, the Defendant—the evidence was that the Defendant admitted at one time that he was and had been in the business of selling cocaine in this state. I do recall that there was some testimony concerning some domestic quarrel, I don't recall whether there was any violence associated with it or not at this time, but the fact that there was no physical vio-

lence committed by the Defendant doesn't detract from the fact that he created a great potential for harm to others by the distribution of this drug, harm to addicts, harm to first users possibly, although there is no evidence as to who the recipients of distribution of the drug were, that is certainly reasonable to infer that for persons that were addicted to the use of cocaine and to persons who may not have had an opportunity to become addicted but could become addicted by reason of the distribution of this drug to them made possible through the conduct of the Defendant."

However, it is apparent that the judge's statement at the motion-to-reduce-sentence hearing related in part to defendant's affidavit, which included a statement that "no physical injuries were suffered by any party as a result of this activity."

■ We find no fault whatsoever with the judge's comments at the sentencing hearing. That sentencing hearing included evidence of many other aggravating factors which justified the sentence. The comments at the motion-to-reduce hearing clearly indicated the offense could ultimately result in physical injury by those who might use the controlled substance. The comments were given as an explanation for explicitly rejecting defendant's statement of no injury and not as an aggravating factor of a sentence that had already been determined at a prior hearing. See *People v. Adams* (1988), 168 Ill. App. 3d 588, 590, 522 N.E.2d 819, 821; *People v. Mounson* (1989), 185 Ill. App. 3d 31, 38-39, 540 N.E.2d 834, 839.

The sentence by the trial judge was well below the 80-year possible maximum term of imprisonment and was not an abuse of discretion. See *People v. Ward* (1986), 113 Ill. 2d 516, 526-27, 499 N.E.2d 422, 425-26.

For the foregoing reasons, we affirm.

Affirmed.

GREEN, P.J., concurs.

JUSTICE STEIGMANN, specially concurring:

Although I agree fully with the majority's decision, I write specially to express my concern about the frequency with which the legislature has amended the Illinois Controlled Substances Act (Act) and the Cannabis Control Act (CCA) (Ill. Rev. Stat. 1989, ch. 56½, par. 701 *et seq.*) and to call for some restraint in the future when other amendments are proposed.

In the last 4½ years, the General Assembly has enacted the following 27 *substantive* amendments to the Act and the CCA:

Public Act 85—140, §1 (1987 Ill. Laws 1007): amended sections 204 and 206 of the Act (amending Ill. Rev. Stat. 1985, ch. 56½, pars. 1204, 1206).

Public Act 85—537, §1 (1987 Ill. Laws 2356): added section 406.1 to the Act (see Ill. Rev. Stat. 1987, ch. 56½, par. 1406.1).

Public Act 85—616, §1 (1987 Ill. Laws 2700): amended section 407 of the Act (amending Ill. Rev. Stat. 1985, ch. 56½, par. 1407).

Public Act 85—743, §2 (1987 Ill. Laws 3160, 3164): added section 401.1 to the Act (see Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1).

Public Act 85—948, §1 (1987 Ill. Laws 4133): amended multiple sections of the Act.

Public Act 85—1003, §3 (1987 Ill. Laws 4710, 4716): amended multiple sections of and added multiple sections to the Act.

Public Act 85—1030 (1988 Ill. Laws 200): attempted to undo erroneous portions of Public Act 85—1003.

Public Act 85—1260, §1 (1988 Ill. Laws 2553): amended various sections of the Act.

Public Act 85—1280, §1 (1988 Ill. Laws 2650): amended section 102 of the Act (see Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1102) (text eff. July 1, 1988).

Public Act 85—1287, §3 (1988 Ill. Laws 2667, 2671): amended section 406 of the Act (amending Ill. Rev. Stat. 1987, ch. 56½, par. 1406).

Public Act 85—1294, §1 (1988 Ill. Laws 2690): amended section 401.1 of the Act (amending Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1).

Public Act 85—1388, §3 (1988 Ill. Laws 3204, 3208): added section 5.1 to the CCA (see Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 705.1).

Public Act 86—265, §1 (1989 Ill. Laws 1891): amended section 410 of the Act (amending Ill. Rev. Stat. 1987, ch. 56½, par. 1410).

Public Act 86—266 (1989 Ill. Laws 1893): amended various sections and repealed two sections of the Act.

Public Act 86—604, §1 (1989 Ill. Laws 3295): amended various sections of the Act.

Public Act 86—625, §1 (1989 Ill. Laws 3441): amended section 312 of the Act (amending Ill. Rev. Stat., 1988 Supp., ch. 56½, par. 1312).

Public Act 86—809, §2 (1989 Ill. Laws 4251): added section 405.1 to the Act (see Ill. Rev. Stat. 1989, ch. 56½, par. 1405.1).

Public Act 86—946, §3 (1989 Ill. Laws 5667, 5673): amended section 407 of the Act (amending Ill. Rev. Stat. 1987, ch. 56½, par. 1407).

Public Act 86—1382, §15 (1990 Ill. Laws 2877, 2884): amended section 12 of the CCA (amending Ill. Rev. Stat. 1989, ch. 56½, par. 712).

Public Act 86—1391, §1 (1990 Ill. Laws 2957): amended section 401.1 of the Act (see Ill. Rev. Stat. 1989, ch. 56½, par. 1401.1).

Public Act 86—1459, §13 (1990 Ill. Laws 3437, 3441): added section 407.2 to the Act (see Ill. Rev. Stat., 1990 Supp., ch. 56½, par. 407.2).

Public Act 87—466, §13 (1991 Ill. Laws 2416, 2422): amended section 409 of the Act (amending Ill. Rev. Stat. 1989, ch. 56½, par. 1409).

Public Act 87—524, §3 (1991 Ill. Laws 2611, 2618): amended section 407 of the Act (amending Ill. Rev. Stat. 1989, ch. 56½, par. 1407).

Public Act 87—544, §9 (1991 Ill. Laws 2730, 2734): added section 5.2 to the CCA.

Public Act 87—614, §4 (1991 Ill. Laws 3061, 3066): amended section 505 of the Act (amending Ill. Rev. Stat., 1990 Supp., ch. 56½, par. 1505).

Public Act 87—754, §2 (1991 Ill. Laws 3943, 3945): amended sections 102, 208, 308, 312, 401, 402, 405, 407, 407.2, 410, and 411 of the Act (see Ill. Rev. Stat. 1989, ch. 56½, pars. 1102, 1208, 1308, 1312, 1401, 1402, 1405, 1407, 1410, 1411; Ill. Rev. Stat., 1990 Supp., ch. 56½, par. 1407.2).

Public Act 87—772, §§2, 3 (1991 Ill. Laws 4129, 4131, 4132): added section 411.2 of the Act and section 10.3 of the CCA.

The legislative frenzy the above list reveals is not without its costs. Those costs include errors committed by the legislature when it deprives itself of the patient deliberation normally accorded legislative proposals (see Public Acts 85—1003, 85—1030, and 85—743, all of which are discussed in the majority's opinion in this case). Other costs include the confusion and uncertainty these frequent changes engender in the prosecutors and police who have the duty of enforcing the drug laws. Furthermore, because the stakes involved are so great—persons convicted of violating drug laws are frequently sentenced to the penitentiary for lengthy periods of time—defense attorneys work diligently to find some loophole or legislative oversight that will thwart criminal prosecutions of defendants charged with violating the drug laws. When attorneys find some legislative flaw to argue, the courts must weigh such arguments very carefully, consistent with their duty to ensure that persons accused of crime receive the criminal due process rights to which they are entitled.

Given these costs, the benefits derived from all this legislative activity should be carefully assessed. My assessment leaves me unpersuaded that all this activity is justified. For instance, I doubt that anyone could seriously argue that prior to 1987, the legislature had not passed enough laws reflecting this State's policy of criminalizing and seriously punishing unlawful drug trafficking and possession. I further doubt that this State needed an additional 27 *substantive* amendments to its drug laws in the last 4½ years to further that policy or to protect its citizens.

By these remarks, I do not mean to criticize any particular enactment on the list set forth above; nor do I mean to criticize the legislature for carefully reviewing the drug laws from time to time to see whether "some tuckpointing" of these laws might be appropriate. Instead, I am concerned about the volume and frequency of such legislative changes, and I believe that they do not reflect the calm deliberation that ought to be the hallmark of the legislative process.